Mutual Finance Company v. Commissioner.
Mutual Finance Co. v. Commissioner
Docket No. 56693.
United States Tax Court
T.C. Memo 1957-82; 1957 Tax Ct. Memo LEXIS 168; 16 T.C.M. (CCH) 359; T.C.M. (RIA) 57082; May 23, 1957
Edward C. Crouch, Esq., Union Commerce Building, Cleveland, Ohio, for the petitioner. Frank W. Hardy, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies in income tax for the years 1950 and 1951 have been determined by the Commissioner against petitioner Mutual Finance Company, a corporation, in the amounts of $4,373.71 and $3,129.86, respectively. The sole issue for determination is whether the excess of insurance premiums received by petitioner over the cost to it of the right to receive those premiums constitutes capital gains or ordinary income. Findings of Fact A portion of the facts have been stipulated by the parties and are so found. Petitioner is a corporation organized *169 under the laws of the State of Ohio, with its principal office located in Cleveland, Ohio. Its Federal income tax returns for the taxable years 1950 and 1951 were filed with the collector of internal revenue at Cleveland, Ohio. The Mutual Finance Company, an Ohio corporation (hereinafter referred to as Old Mutual), was incorporated under the laws of Ohio in 1936 and thereafter, until 1948, was engaged in the business of making small loans and discounting automobile paper. In 1946, Old Mutual through its agent, Bert Winston, became a partner with Fred B. Hartnett of Miami, Florida, in an insurance agency, known as Hartnett Northern General Agency, 99 per cent of the interest in which was owned by Old Mutual. Income tax returns were not filed by Hartnett Northern General Agency (hereinafter referred to as Hartnett). In the course of Old Mutual's loan and discount business, automobile dealers would receive requests for automobile collision and liability insurance, which requests would be forwarded by Old Mutual to Hartnett and then to the insurance company. The term of insurance policies written under this arrangement would vary from 12 months to 36 months, depending upon the term *170 of the loan made by Old Mutual on the automobile covered by the insurance policy. Under the agency agreement, the Stuyvesant Insurance Company, a New York corporation, agreed to pay a commission to Hartnett quarterly beginning December 31, 1946, amounting to 85 per cent of the cumulative pro rata earned premium upon insurance placed with Stuyvesant by Hartnett. The agency agreement provided for other such adjustments not herein pertinent. Late in 1948, the shareholders of Old Mutual voted to liquidate the corporation and sell its assets. A new Mutual Finance Company (the petitioner herein) was incorporated under the laws of Ohio on January 5, 1949, and, by assignment of an agreement entered into between Bert Winston and Old Mutual, purchased certain of the assets of Old Mutual. Petitioner purchased from Old Mutual all the partnership interest of Old Mutual in Hartnett and thus received all its assets for $50,000. The only asset of Hartnett at the end of 1948 (time of purchase) was unearned premiums on insurance policies written prior thereto under the aforedescribed arrangement which would not be earned except over the following 24 to 30 months. Following the purchase of the assets *171 of Hartnett, petitioner did not forward any further requests for insurance to this agency, but liquidated the assets over the subsequent 24 to 30 months. Gradually the unearned premiums were earned. During the year 1949 earned premiums did not total the $50,000 paid by petitioner for the assets of the agency. However, by the end of the year 1950, petitioner had earned and received premiums amounting to $71,718.28. During the year 1951, petitioner completely liquidated this asset of the agency, earning additional premiums of $945.20. Petitioner in its return for the calendar year 1950 reported the excess of the earned premiums over the price paid for the asset ($21,718.28) as capital gain. Petitioner in its return for the calendar year 1951 reported the premiums earned that year ($945.20) as capital gain. The respondent has determined and claims that the excess of earned premiums over the price paid therefor by petitioner is ordinary income and not capital gain as reported by petitioner. Opinion For the purpose of this opinion, we assume, but do not decide, that petitioner in purchasing the assets of Hartnett Northern General Agency acquired a capital asset which consisted of *172 the right to receive the premiums as and when earned upon policies of automobile casualty insurance. The value of that right was obviously $50,000 for that is the purchase price paid by petitioner. When the premiums had been fully earned, petitioner had received $72,663.48 upon its investment. Of the foregoing amount, $21,718.28 profit was thus received by the close of 1950 and $945.20 profit during 1951. Whether the profit represents capital gain, as claimed and reported by petitioner, or ordinary income, as determined by respondent, is the issue for our decision. The profit is ordinary income under section 22(a) of the Internal Revenue Code of 1939 unless section 117(a)(4) of the Code has application to the transaction from which it arose. Obviously, it does not, for capital gains are there defined in part as gain from the sale or exchange of a capital asset. In Joseph A. Guthrie, 42 B.T.A. 696 [Dec. 11,303], we said with respect to a similar fact situation: "Unless there has been a sale or exchange, the gain is fully recognized, even though the gain is derived from an investment in a capital asset. Hale v. Helvering, 85 Fed. (2d) 819; John H. Watson, Jr., 27 B.T.A. 463; *173 George A. Hellman, 33 B.T.A. 901; Cobbs v. Commissioner, 111 Fed. (2d) 644; Ralph Perkins, 41 B.T.A. 1225; Bingham v. Commissioner, 105 Fed. (2d) 971; Fairbanks v. United States, 306 U.S. 436. "The cases just cited support the proposition that as to petitioner the gain was not derived from a sale or exchange of his asset. He sold or exchanged nothing. Whether what he acquired * * * be called property, a right to receive, an interest, an expectancy, a claim or what you will, it was neither sold nor exchanged. Petitioner merely got what he paid for. For present purposes, it was not unlike the receipt of the proceeds of a bond or insurance policy at maturity or redemption. Cobbs v. Commissioner, supra; Ralph Perkins, supra; George A. Hellman, supra; Fairbanks v. United States, supra; John H. Watson, Jr., supra; Arthur E. Braun, Trustee, 29 B.T.A. 1161. * * *" The fact that no new insurance business was being conducted by petitioner through Hartnett is no more indicative of a liquidation in its treatment of the purchased asset than as though *174 the asset had been an unmatured promissory note or bond, for the profit in the form of "earned" premiums in the first instance is in essence no different from profit in the form of "earned" interest in the latter. Both ensue on the mere passage of time without the rendition of further services on the part of the holder. No sale or exchange has been shown to have occurred with respect to the asset here involved, and it follows that the gain realized is ordinary income for both taxable years at issue. See Lewis N. Cotlow, 22 T.C. 1019, affd. (C.A. 2) 228 Fed. (2d) 186. Decision will be entered for the respondent.